**FARMER'S MARINE COPPER WORKS, INC., Appellant,**

v.

**CITY OF GALVESTON, Appellee.**

No. 01–87–00421–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1988.

Roland L. Bassett, Mills, Shirley, Eckel & Bassett, Galveston, for appellant.

Stephen G. Williams, City Atty., Galveston, for appellee.

Before WARREN, DUGGAN and LEVY, JJ.

## Opinion

LEVY, Justice.

Farmer's Marine Copper Works, Inc. ("Farmer's"), a Galveston metal fabricator, appeals from a mandatory injunction sought by the plaintiff below (the City of Galveston) ordering the removal of structures overhanging a public street. Farmer's asserts that the structures extended over only the railroad right-of-way adjacent to its warehouse, that it had the express permission of the railroad to erect the structures over the right-of-way, and therefore the City may not force the removal of these structures without condemnation. Alternatively, Farmer's argues that the structures were erected pursuant to a contract with the City of Galveston in which the City agreed to abandon a public alley, and Farmer's agreed to greatly expand its warehouse. Farmer's argues that the City is therefore estopped by contract or, alternatively, equitably estopped, from forcing the removal of the structures.

The structures involved are craneways that protrude approximately 16 feet from Farmer's warehouse into Galveston's Avenue A at a height of approximately 24 feet. The craneways are steel "I-Beam" supports that allow Farmer's to unload heavy metal objects used in fabrication from trucks on Avenue A directly into their warehouse. Originally, the principal purpose of the craneways was to load or unload railroad cars stopped on the railroad's tracks immediately adjacent to the Farmer's warehouse. The railroad withdrew its tracks in the 1970's, and the only use of the craneways at the time of trial involved trucks parked on Avenue A.

Trial was to the court, which entered findings of fact and conclusions of law. In its first three points of error, Farmer's complains of conclusions of law 4 and 5, in which the court held the following:

4. A mandatory injunction commanding Defendant to remove such obstruction is necessary to prevent immediate and irreparable damage to Plaintiff, who has no adequate remedy at law.

5. As a matter of law, the rights of the City to require the removal of the "I-Beam" craneways are superior to the rights of the Defendant, Farmer's Marine Copper Works, under and by reason of any permission granted by the owner of the railway right-of-way to construct such "I-Beam" craneways.

Farmer's contends in its first three points that the railroad's right-of-way adjacent to the Farmer's warehouse constituted an easement appurtenant, that the permission to construct craneways over this right-of-way amounted to an assignment or conveyance of an interest in property, and that the court erred in ordering the removal of the craneways without allowing compensation for this "taking."

The primary question in an appeal of this type is whether the trial court abused its discretion in ordering the mandatory injunction, which must be sustained if the findings of fact filed by the trial court support its decree. *Zelios v. City of Dallas*, 568 S.W.2d 173, 174 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). If the injunction is to be affirmed, we must then determine whether the court erred in denying compensation.

The trial court entered the following findings of fact relevant to the disposition of this appeal:

1. Plaintiff, City of Galveston, is a municipal corporation duly organized and existing under the Constitution and laws of the State of Texas, and being situated in Galveston County, Texas.

2. Avenue A (sometimes known as Port Industrial Boulevard or Water Street) is, and at all times material hereto was, a public street situated within the

corporate limits of the City, same being owned and controlled by the City.

3. By ordinance duly adopted on February 21, 1988, the City of Galveston granted a right-of-way upon and along Avenue A and other streets within the corporate limits of the City ... to the Gulf, Colorado and Santa Fe Railway Company for such company to lay its railway tracks and to maintain and operate a steam railway thereon, with the necessary side tracks and switches. The ordinance did not grant the Railway Company the right to construct encroachments on such streets other than for laying tracks and for maintaining and operating a steam railway thereon, with necessary side tracks and switches. The ordinance did not grant the Railway Company any right to allow others to construct encroachments on such streets.

5. By Ordinance No. 65–44 duly adopted by the City Council ... on July 29, 1965, the City Counsel ... consented to and approved the transfer of all rights and privileges owned by the Gulf, Colorado and Santa Fe Railway Company to Atchison, Topeka and Santa Fe Railway Company, as shown by Defendant's exhibit 4, and thereafter the Atchison, Topeka and Santa Fe Railway Company operated a steam railway upon and along Avenue A within the corporate limits of the City ... until the late 1970's.

6. Defendant Farmer's Marine and Copper Works, Inc., a Texas corporation ... with its principal place of business in the City and County of Galveston, Texas, is, and at all times material hereto was, the owner of certain real property adjoining and abutting a portion of Avenue A, and of a certain over-head "I–Beam" craneway which extended over and into said street right-of-way a distance of approximately 16 feet.

7. By Ordinance No. 62–71, duly adopted on June 14, 1962, the Galveston City Council abandoned an alley extending through the Defendant's property adjacent to that portion of Avenue A involved in this litigation and in consideration of such abandonment the Defendant agreed to and did construct a new struc-

ture adjacent to Avenue A. At that time, the overhead "I–Beam" craneways, which extended over Avenue A and the railroad right-of-way, were constructed, but the ordinance did not grant Defendant the right to construct such encroachment.

8. In 1962 and prior to construction, the City ... issued a building permit to the Defendant authorizing Defendant to construct the structure which included the "I–Beam" craneways extending over Avenue A and the railroad right-of-way. However, the plans do not clearly show that the "I–Beam" craneways extended over Avenue A and the railroad right-of-way.

9. The Atchison, Topeka and Santa Fe Railway Company ... has never abandoned the right-of-way upon and along Avenue A and adjacent to the real property owned by the Defendant. The rights and privileges granted by such ordinance of February 21, 1888, have never been revoked or modified, unless by virtue of changes in the Texas Constitution. However, the railway tracks have not been used or been capable of being used since the late 1970's.

10. The Atchison, Topeka and Santa Fe Railway Company expressly granted permission to Farmer's Marine Copper Works, Inc., to install and maintain the overhead "I–Beam" craneways which are the subject of this litigation over and into the railroad right-of-way obtained by the ordinance of February 21, 1888, and such permission has never been revoked or modified.

12. The railway tracks installed by the Gulf, Colorado and Santa Fe Railway Company under the rights and privileges granted by the ordinance dated February 21, 1888, were removed at some time in the latter part of the 1970's, and Farmer's ... has thereafter and to the present date used the "I–Beam" craneways to remove large, heavy objects from trailer trucks on Avenue A delivering such objects to the property owned by the Defendant and adjacent to Avenue A, several times a year.

13. [P]laintiff duly notified Defendant of the necessity to remove said encroachment from the street right-of-way described above.

14. [D]efendant refused to remove the "I–Beam" craneway encroachment and until time of trial continued to refuse to remove the encroachment.

15. In order to enhance the quality and safety of public travel upon Port Industrial Boulevard and that portion of Avenue A involved in this suit, the Plaintiff obtained federal funding assistance in excess of $3,000,000.00 for construction of improvements of roadway.

16. [T]he Federal Government informed the Plaintiff that the federal funding would be withdrawn if the encroachment were not removed by April 23, 1987.

Since Farmer's does not attack the legal or factual sufficiency of the evidence supporting any finding of fact made by the trial court, these findings bind the parties and the reviewing court. *Zelios v. City of Dallas*, 568 S.W.2d at 175; *Lexington Ins. Co. v. Island Recreational Development Corp.*, 706 S.W.2d 754, 756 (Tex.App.— Beaumont 1986, writ ref'd n.r.e.); *Wade v. Anderson*, 602 S.W.2d 347, 349 (Tex.Civ. App.—Beaumont 1980, writ ref'd n.r.e.); *Spring Woods Bank of Houston v. Lanier*, 601 S.W.2d 425, 434 (Tex.Civ.App.— Waco 1980, no writ).

Here, the court found that Avenue A was a public street owned in fee by the City, and that the City granted a right-of-way for the purpose of laying and maintaining tracks and operating a railroad upon this public street. The court found, however, that the ordinance granting the right-of-way did not thereby grant the right to construct encroachments other than for the stated purposes. The court also found that the ordinance did not grant any right to allow others to construct encroachments on such streets. If these factual findings support the decree, the court did not abuse its discretion in granting the mandatory injunction. *Zelios v. City of Dallas*, 568 S.W.2d at 174.

Although the trial court made no express finding that the railroad owned no fee interest in land appurtenant to the easement granted by the City, by finding that Avenue A was a public street owned and controlled by the City, the court *impliedly* found that the railroad owned no fee interest in the right-of-way land, or land appurtenant to the easement. *Lexington Ins. Co. v. Island Recreational Development Corp.*, 706 S.W.2d at 756; *Rancho Camille, S.A. v. Beachum*, 596 S.W.2d 632, 638 (Tex.Civ.App.—Waco 1980, no writ).

■ Based upon the court's implied finding that the railroad owned no fee interest in land appurtenant to the public street, we hold that the right-of-way granted by the City was an easement "in gross." *See Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 203 (Tex.1962). The case is therefore distinguishable from those cases in which the railroad owns the right-of-way land in fee. *Cf., City of Houston v. Ft. Worth & D. Ry. Co.*, 619 S.W.2d 234 (Tex. App.—Houston 1981, writ ref'd n.r.e.); *see also Texas Elec. Ry. Co. v. Neale*, 151 Tex. 526, 252 S.W.2d 451 (1952).

■ Although easements "in gross" are personal to the grantee only, and are generally not assignable or transferrable, the parties *may* create an assignable easement in gross through an express assignment provision. *Williams v. Humble Pipe Line Co.*, 417 S.W.2d 453 (Tex.Civ.App.— Houston 1967, no writ).

However, in finding of fact no. 5, the court found that the source of the Atchison, Topeka and Santa Fe Railway Company's right-of-way (this was the railroad company that granted the appellant permission to erect craneways over the right-of-way) was a 1965 City ordinance *consenting* to the assignment of the then existing right-of-way by the Gulf, Colorado and Santa Fe Railway Company. This ordinance, which originated the rights of the Atchison railroad in the right-of-way according to the *unchallenged* fact finding of the court, was admitted as defendant's exhibit 4. This ordinance expressly provides that consent to the assignment is required because of the existing prohibition "against the as-

signment of rights ... *without the approval and consent of the City of Galveston....*" (Emphasis supplied.)

Even more to the point, the court found in finding of fact no. 3 that the City granted the railroad neither the right to construct such encroachments, nor the right to allow others to construct such encroachments. This finding has not been attacked on appeal.

Based upon these findings, the court correctly concluded that the City's rights were superior to those of the appellant, and properly exercised its discretion in issuing the mandatory injunction.

▮ Further, because the court found that the permission granted by the railroad to Farmer's went beyond the easement rights transferred to it by the City ordinance, this permission created no actual interest in property requiring condemnation, and the court properly refused Farmer's request for compensation.

Farmer's first three points of error are overruled.

Farmer's fourth point of error states:
The trial court erred in failing to hold that estoppel by contract and equitable estoppel prevent the City from requiring the removal of the craneways extending over a City street after specific approval and subsequent acquiescence by the City for more than twenty-five years. (Conclusion of Law No. 7).

▮ As a general rule, the doctrine of estoppel does not apply against a unit of government in the exercise of public or governmental functions. *City of Hutchins v. Prasifka*, 450 S.W.2d 829 (Tex.1970). In some limited cases, however, courts have held that municipal corporations may be estopped where justice, honesty, and fair dealing require it. *City of Houston v. Lyons Realty, Ltd.*, 710 S.W.2d 625 (Tex. App.—Houston [1st Dist.] 1986, no writ); *Clear Lake City Water Auth. v. Winograd*, 695 S.W.2d 632 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Farmer's argues that the 1962 ordinance abandoning an alley, and requiring the construction of an expansion to Farmer's warehouse, created a contract that included craneways as part of the expansion. Further, Farmer's contends that the City approved the craneways by approving the construction plans for the expansion, and by acquiescing to, and accepting the benefits of, the presence of the craneways for 25 years.

▮ The trial court found that the craneways were constructed at the same time as the new structure adjacent to Avenue A, but the court found in finding of fact no. 7 that the 1962 ordinance did not grant Farmer's the right to construct these encroachments. Furthermore, regarding the approval of the construction plans, the court found in finding of fact no. 8 that the plans do *not* clearly show that the craneways extended over Avenue A and the railroad right-of-way.

We are bound in our review by these unchallenged findings of fact. *Zelios v. City of Dallas*, 568 S.W.2d at 175. The court found in findings of fact nos. 7 and 8 that the City ordinance did not grant the right to build encroaching craneways, and that the City lacked notice that the craneways encroached upon Avenue A. These unchallenged fact findings support the court's decree. *Id.* at 174.

Where the City has neither contracted for the addition nor encouraged it, and where no notice is shown to support a theory of acquiescence, ratification, or acceptance of benefits, the general rule prohibiting estoppel of municipalities controls. *City of Hutchins v. Prasifka*, 450 S.W.2d at 835–36. We conclude that the issuance of the mandatory injunction was not an abuse of discretion.

Farmer's fourth point of error is overruled.

The judgment is affirmed.