# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2021

Lyle W. Cayce
Clerk

No. 20-50155

ALBERT SIDNEY JOHNSTON CHAPTER, CHAPTER NO. 2060,
UNITED DAUGHTERS OF THE CONFEDERACY; ROBIN TERRAZAS,
PRESIDENT; JEAN CAROL LANE, FIRST VICE PRESIDENT,

*Plaintiffs—Appellants*,

*versus*

CITY OF SAN ANTONIO,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:17-CV-1072

Before SMITH, CLEMENT, and OLDHAM, *Circuit Judges*.

EDITH BROWN CLEMENT, *Circuit Judge*:

Three events shaped this lawsuit's genesis. First, in 1899, the Barnard E. Bee chapter of the United Daughters of the Confederacy erected a monument of a Confederate soldier in a San Antonio Park, also placing a time capsule beneath the statue. In 1932, the Albert Sidney Johnston chapter of the United Daughters of the Confederacy formed, and that chapter functionally took the place of the Bee chapter when the Bee chapter dissolved

in 1972. Finally, just over a century after the monument was erected, the City of San Antonio removed both the monument and time capsule.

The ASJ chapter sued the City, claiming violations of the First and Fourteenth Amendments. Finding the ASJ chapter had no property right in the monument, time capsule, or land at the center of the park, the district court dismissed the lawsuit for lack of standing. Upon *de novo* review, *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012), we reach the same conclusion and affirm.

In recent years, courts across the country have seen similar challenges involving Confederate statues. Our circuit is not an exception. *See, e.g.*, *Monumental Task Comm., Inc. v. Chao*, 678 F. App'x 250, 252 (5th Cir. 2017) (mem.). In fact, we have seen a previous challenge involving this very monument. *See McMahon v. Fenves*, 946 F.3d 266 (5th Cir. 2020) (Clement, J.), *cert. denied*, 141 S. Ct. 363 (2020). In *McMahon*, another First Amendment case, this court made clear that "agreeing with speech" and "authoring speech" are distinct. *Id.* at 272. Accordingly, because the plaintiffs "merely agree[d] with the ideas that they [felt the] monuments express[ed] and sued in hopes of keeping them on display," we affirmed the district court's dismissal for lack of standing. *Id.* We noted that the plaintiffs sought only "to 'vindicate their own value preferences,' not to redress a First Amendment injury particular to them." *Id.* (quoting *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972)).

Aware of our recent decision, the ASJ chapter attempts to distinguish its case from *McMahon* by presenting us with reasons it had a right to go upon the land at the center of the San Antonio park. Citing an 1899 document,[1]

---

[1] The parties dispute the characterization of this document, whether it is an ordinance or City Council's meeting minutes. Its characterization is immaterial

No. 20-50155

the ASJ chapter contends that the City of San Antonio conveyed a property interest or privilege to use the land to the ASJ chapter. But, the difficulty for the ASJ chapter is twofold. Not only is its theory unpersuasive and incorrect, but also—even if there had been a transfer of some right to the land—the ASJ chapter was not the recipient of any such conveyance.

The ASJ chapter would have us believe that it possesses an easement or license to use the land. But, the land was generally inalienable and unassignable. *See Zachry v. City of San Antonio*, 305 S.W.2d 558, 562 (Tex. 1957) ("[A] municipal corporation has no power to sell or convey land dedicated as a park[.]" (citation omitted)); *see also Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 203, 207 (Tex. 1962) ("[O]rdinarily, easements in gross are not transferable or assignable." (citation omitted)). And, the parties have not pointed us to any facts supporting an exception to these rules. *See, e.g., Farmer's Marine Copper Works, Inc. v. City of Galveston*, 757 S.W.2d 148, 151 (Tex. App.—Houston [1st Dist.] 1988, no writ.) ("[T]he parties *may* create an assignable easement in gross through an express assignment provision." (citation omitted)).

Furthermore, any permission to use the land was limited. *See Thompson v. Clayton*, 346 S.W.3d 650, 655 (Tex. App.—El Paso 2009, no pet.) ("A license in real estate is revocable at will." (citing *Drye*, 364 S.W.2d at 203)); *cf. State v. Travis County*, 21 S.W. 1029, 1031 (Tex. 1893) (explaining that, where the state of Texas did not make a general or unqualified dedication to the public, it conveyed to Travis County only a privilege to use the land). Any privilege to use the land would have expired with the placement of the monument and time capsule in the park. *See* ROA.2185

---

because it does not alter the conclusion that the ASJ chapter does not have a property interest in the land at the center of the park.

3

("Petition of the Daughters of the Confederacy *for permission to erect a monument in Travis Park*" (emphasis added)).

Even assuming *arguendo* that the 1899 document created an easement or irrevocable license, however, it transferred only to the *Bee chapter* and terminated with its dissolution in 1972. The ASJ chapter did not produce a single writing demonstrating that the Bee chapter transferred the alleged property interest. *See Thompson*, 346 S.W.3d at 654 (explaining that the creation and transfer of an easement is "subject to the statute of frauds"). And—if *any* entity relied on the 1899 document—that entity was the *Bee chapter*, not the ASJ chapter. *See id.* at 655 (explaining that there may be exceptions to the general rule that licenses are revocable, such as "where the licensee has been induced to expend a considerable amount of money or labor in reliance on the subsistence of his license"). Thus, the ASJ chapter does not possess an easement or a license to the land; accordingly, *McMahon* forecloses the First Amendment claim.

For the same reason, the ASJ chapter's Fourteenth Amendment challenge crumbles as well. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[A]n 'injury in fact' [is] an invasion of a legally protected interest which is [] concrete and particularized . . . ." (citations omitted)). And, even if we addressed the merits, it did not claim an infringement on a liberty interest, and—as demonstrated above—has no such property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."); *cf. Brownback v. King*, 141 S. Ct. 740, 750 n.8 (2021) ("In cases such as this one where a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6). Or both."). Furthermore, its members had the opportunity to be heard at public

No. 20-50155

meetings prior to the removal of the monument. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (citation omitted)).    Thus, the ASJ chapter's failure to establish a particularized injury undermines both of its claims.

AFFIRMED.